# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| **DEBORAH STOUT,** ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 7:18CV00402 |
| ) | |
| v. ) | **OPINION AND ORDER** |
| ) | |
| **LT. RAELYN HAIGHT,** ) | By: James P. Jones |
| ) | United States District Judge |
| Defendant. ) | |

*Deborah Stout, Pro Se Plaintiff; Stacie A. Sessoms, Assistant Attorney General, Office of the Attorney General, Richmond, Virginia, for Defendant.*

Plaintiff Deborah Stout is a Virginia Department of Corrections ("VDOC") inmate housed at Fluvanna Correctional Center for Women ("Fluvanna") in Troy, Virginia. Stout initiated this civil rights action pursuant to 42 U.S.C. § 1983 against VDOC employee Lt. Raelyn Haight, alleging that Haight had harassed her and retaliated against her and had allowed a fellow offender, T. Brown, to harass her. The case is before the court on the defendant Haight's Motion to Dismiss for Failure to State a Claim.

## I. Facts.

In her Complaint, Stout alleged that Haight called her into the Unit Manager's Office on January 3, 2018, and was "forceful and aggressive" when she accused Stout of telling another offender, Lana Slaughter, that she was going to write up Haight if Haight did not raise her pay for her prison job from 35 cents an

-1-

hour to 45 cents an hour. Stout alleged that, when she told Haight that this conversation never took place, Haight became "frustrated" and accused Stout of lying. She alleged that Haight told her, "I hate a liar. . . . I'm sick of you." Stout also alleged that Haight threatened to remove her from her prison job as a vestibule worker by saying, "One thing I am going to do, is get you out of my vestibule area." Stout said that she asked Haight if Haight was looking for a reason to fire her, and Haight responded, "I don't need a reason, I'm not scared of you. I'll just say that the staff and inmates are complaining about your job performance, and you need to remember that I am your supervisor."

Stout further alleged that she began to remind Haight "about . . . bullying in the past from her coworker Tawana Brown within the work place." Stout said that Brown had falsely accused her and sabotaged her work. In particular, Stout alleged that Brown falsely told Haight that Stout planned to pay an offender $500 to find "dirt" on Haight to get her removed from her job and that Stout had paid $500 each to two other offenders to have Brown and Brown's cellmate removed from the honor wing. She also said that Haight had assigned "her undesirable work as punishment." Stout further alleged that Brown would water down the cleaning chemicals prior to Stout's shift and then tell Haight that Stout had done it. Stout also alleged that Brown would sell sanitary napkins and chemicals to offenders and then tell Haight that Stout was giving out too many supplies. Stout

said that Brown would steal juice from the prison kitchen during breakfast and hide it on the supply cart under gloves for Stout's work shift. Stout said that, when she reported this to Officer Johnson-Ross, who told Brown, she was removed from her prison job the following week.

Stout said that fellow offender Brown would curse her out and use sarcasm when answering work-related questions. When Stout asked Haight to not make her work with Brown, Haight made Stout "do supplies on Mondays" with Brown and allowed Brown to order Stout around. Stout alleged that Brown told other offenders not to talk to Stout because Stout was a "snitch." She also said that Brown approached Stout in an aggressive manner, in the presence of Correctional Officer Fisher and pushed and "chest bumped" Stout. She said that Brown was not disciplined for this action. Stout also alleged that offender C. Crawford, a friend of Brown, hit her in the back, and Haight and Unit Manager Thomas "did nothing." Stout also alleged that offender Princes Brownfield threw chemicals at her and got the chemicals all over the vestibule floor, but nothing was ever done to her.

Stout said that offender Ester Gorden approached her in an aggressive manner from behind and held her tightly and whispered in her ear how much she missed her girlfriend, and she ordered Stout to go tell the officer to allow her to go to Building #3 for trip passes so she could see her girlfriend. When Stout reported this to Mr. Thomas on December 25, 2016, he said this was a violation of the

Prison Rape Elimination Act ("PREA"), and he would handle it, but he did nothing. Stout said that Brown lied to Thomas and told him that Stout had placed a blue blanket on his desk, which resulted in Stout no longer being allowed to clean Thomas's office. Stout said that Brown also lied about how she distributed supplies, causing her to no longer be allowed to hand out supplies.

Stout alleged that Haight allowed this bullying, harassment and aggressive behavior from Brown and other offenders toward Stout. Stout said that she was not included in painting for inspection or handing out food packages because Brown was allowed to pick the work crew from offenders who were not vestibule workers or workers at all. Stout said that she was "very uncomfortable" whenever Brown came into her work area because Brown would stand on the side of the room and laugh, whisper and stare at Stout. Stout said that Officer Crawford witnessed this on one occasion and sent Brown and others inside the building. Stout said that Haight and Thomas did nothing about this harassment. Stout said that Brown was never disciplined for her bullying, harassment and aggressive behavior and actions toward Stout. Stout said that she reported all of this to Fluvanna Investigator Jamerson, but Jamerson refused her request for copies of her reports.

Stout alleged that, after the 5:45 p.m. count on January 3, 2018, offender Lana Slaughter approached her and said that Haight had just told her that Stout had

"wrote her out of the building." Stout said that she told Slaughter that this was not true. She said that she told Slaughter about Haight saying that Slaughter told her that Stout was going to write up Haight. Slaughter told Stout that was not true. On January 3, 2018, Brown told offender Etta Scott that Stout had been terminated from her prison job.

Stout said that she spoke with Counselor Lawrence on January 5, 2018, between 1:00 to 1:30 p.m. in the Unit Manager's Office about Stout's name being removed from the worker's board. Lawrence said that Haight had said on January 3, 2018, that Stout could continue to work, and she did not know why Stout's name was removed from the board. Lawrence told Stout to do as Haight instructed her. Stout said, on January 5, 2018, at 9:10 p.m., she went out to the vestibule to get a supply cart to fill it up with supplies for work the next morning, and Officer Taylor unlocked the door to the 1-A storage closet for her. In a minute or so, Taylor's voice came over the intercom and asked Stout if she still worked in the vestibule area. Stout responded that she did. She said that Taylor then told her, "Well, your name has been taken off the workers board, so come on out until I find something out." Stout said she went out to the vestibule area to talk to Officer Taylor. She also said that she requested to speak to Sgt. Jenkins. Stout said that she asked Taylor if Brown was the one who told her she was terminated. She said that Taylor did not deny it.

Stout said that she asked Officer Taylor on January 6, 2018, at 3:00 a.m. if she had received any further information about Stout's job status. Officer Taylor said that she would let the Control Booth Officer, Rutledge, know what she found out and to not let Brown interfere with Stout working. She said that Taylor said she would pass the information to the next shift. She said that she asked Officer Rutledge at 5:12 a.m. that day if he had heard anything about her job status, and he said, "Ma'am, I don't know the answer to your question." At 6:20 a.m., Stout said that she asked the next shift officer, Officer Barry, if she had any information on Stout's work status. She said that Barry told her, "You're not working." When Stout asked who said this, Officer Barry said that Sgt. Henderson had said it. At about 6:24 a.m., Stout said that offender Felisha Charon told her that she had heard that Stout had been terminated.

Stout said that at about 6:40 p.m., she requested to speak to Sgt. Henderson. She said that Officer Barry replied, "You're not working and she doesn't want to talk to you." Stout said Sgt. Henderson heard Barry make this statement and asked to whom she was speaking. When Barry told Henderson that she was talking to Stout, Henderson said, "let her come." Stout explained what had occurred to Henderson, and Henderson looked Stout's status up in the CORIS system and told her that she was still listed as a worker and was allowed to continue work. Stout said that Henderson informed the next shift of Stout's status.

Stout said that on January 6, 2018, at 11:18 a.m., during count time, Brown asked Stout if she could talk to her later. Stout said that she did not speak with Brown because Henderson had told her not to unless she had an officer present. Several offenders told offender Scott on January 6 and 7 that Brown had told them that Stout had been terminated. Stout said that Officer Barry told her on January 6, 2018, at 10:14 a.m. "she had better watch out or offender . . . Brown will get her fired, again." Stout said on January 6, 2018, at 2:43 p.m., while she was walking to her cell in the 1-A housing unit, Brown, who was standing on the top tier, said, "I don't care about you, bitch, kill yourself, kill yourself twice." Stout said that she kept walking, but told Sgt. Henderson about the incident and documented everything. Stout said that she gave this information to Investigator Jamerson. She said that Unit Manager Thomas had staff tell her that he was too busy to see her to hear her complaints.

Stout said that on January 6, 2018, at 2:05 p.m., offender Tony Hartlow approached her and said that she had heard that Stout was fired. When Stout asked who had told her that, Hartlow said "several people." Stout said that on January 6, 2018, at 10:45 p.m., offender K. Rodriguez from the 1-B wing asked what she was doing working because she had been fired. Offender Scott spoke up and told Rodriguez that it was not true. That same day several offenders asked Scott why Stout was working because Brown had told them that Stout had been fired.

Stout said that Haight terminated her job on January 10, 2018, after staff and offenders were asking why Brown was saying that Stout had been terminated. Stout said that she tried to talk with Sgt. Anderson about the events that had occurred over the previous weekend. Anderson said that he did not know anything about Stout being fired. Stout asked to speak to Investigator Jamerson, and Sgt. Anderson said he would call her, but he did not. On January 10, 2018, at 1:44 p.m., Stout received a termination paper from Haight at the entrance of her cell door. Haight then pulled the door open, and said, "Here you go." When Stout asked to speak with the Lieutenant, Haight said, "not right now" with no explanation.

On January 10, 2018, at 1:51 p.m., Stout asked Officer Johnson if he would ask Haight if she would speak with Stout about the termination paper because Sgt. Henderson had told Stout to get with Haight to see if it was true that Brown had been telling the entire building that Stout had been terminated on January 3, 2018. Stout said that no one else had made her aware that she had been terminated until January 10, 2018. Stout also said that the termination was "not filed out properly" nor was G. Trotter, the Work Program Assignment Reviewer, aware of the termination, because Stout had not been submitted for termination by Haight or anyone else. Again, Stout said that she was avoided, and her request was not addressed.

On February 6, 2018, Unit Manager Thomas told Stout that he could not resolve her Informal Complaint FCC-18-INF-00747 because he was no longer assigned to her housing unit. Stout said that the Complaint was assigned by the grievance coordinator to Unit Manager M. Jones. Stout said that Thomas told her she had to take the Complaint to the next level to get it evaluated, but this is not what he wrote on the Complaint form after Stout left his office. Stout said that she did not receive the Complaint back until February 13, 2018, to know what Thomas wrote on the form.

Stout said that she wrote three requests to have a meeting to resolve her complaints, but never received a response. Stout said that on February 9, 2018, she began to write G. Trotter, inquiring what her job status was in CORIS and why, all of her job applications were being disapproved. Trotter told her that she was still listed in CORIS as a vestibule worker. Because she was still employed with Haight as her supervisor, Haight would have to approve any job transfer before Stout would qualify for an interview or to be hired for another job.

Stout said that on February 14, 2018, during lunch time in the A-1 Chow Hall, she requested Haight to sign off on her applications for another job. She said that Haight refused and told her to write it up because that was what she did. Stout said that Haight's action stopped her from being interviewed for any job posting and could have resulted in her being removed from the honor wing unit because a

prison job was required to reside in the unit. Also, Stout said that the loss of income from her prison job interfered with her paying her monthly college tuition. Stout said that her withdrawal requests were being rejected for false reasons, which were later found to be unfounded by accounting.

Stout said that Lt. Stone said that Haight had told him that the reason she terminated Stout from working in the vestibule area was that Stout had stolen something from the work area. Stout alleged that she then filed an Informal Complaint on Haight for fabricating and lying, but she did not allege the date on which this occurred. She said that Lt. Stone, Unit Manager M. Jones and Unit Manager Davis were present when Lt. Stone told Stout that if she withdrew her Informal Complaint against Haight, he would "get this straightened out," but this never happened after Stout withdrew her Informal Complaint.

Stout said that on February 21, 2018, she filed an Informal Complaint on Haight for submitting a false workers time sheet. Stout said that this Informal Complaint was not addressed until March 23, 2018, by Unit Manager M. Jones. She said that Jones sent the Complaint to the Business Office, and Julie Schleir confirmed with Haight that Stout did not work from January 8 to February 4, 2018. Therefore, the state's pay should be returned, and the Business Office thanked Stout for her honesty.

Stout said that she spoke with an institution supervisor ("Puryear") on April 18, 2018, while walking to pill line around 8:16 a.m. and asked him why he had not responded to her requests to meet with him when Assistant Warden Snoddy had told her that he had notified Puryear on three different times, March 12, March 20 and March 30, 2018, of Stout's request to speak with Puryear. She said that Puyear claimed he was not ever contacted by Assistant Warden Snoddy and knew nothing about Stout's issues. She said that Puryear said that he would get back with Stout the following week to resolve the matter, but he never did.

Stout said that she wrote a letter to Warden Aldridge on February 20, 2018, about "the bullying, harassment, and aggressive behavior" of Haight, but she never received a response from the Warden. Stout said that bullying was often found within Fluvanna, especially in the workplace. Stout said that common tactics were making false accusations, sabotaging Stout's work and assigning undesirable work as a punishment. Stout said that "words matter," and Haight did not "hesitate to throw them around."

Stout alleged that she was "belittled in public" by comments such as saying "that's stupid" in response to her ideas, others taking credit for her work, Brown making false accusations against her and lying about her work performance. Stout said that Brown harassed Stout with verbal putdowns "based on disability" and isolated her by encouraging others to turn against her socially and physically, and

Haight allowed it. Stout also alleged that Haight showed unequal treatment toward Stout.

Stout filed 98 pages of exhibits with her Complaint. These exhibits are copies of numerous administrative remedies forms Stout filed with prison officials. Since the matter is not before the court on a claim of failure to exhaust administrative remedies, these exhibits will not be outlined at length because they simply repeat facts Stout has stated in her Complaint. It is, however, important to note that these document show that the earliest attempt by Stout to file any request for administrative remedies was on January 12, 2018, when she filed an Informal Complaint regarding Haight's actions.

## II. Analysis.

Defendant Haight has moved for dismissal of Stout's claims against her for failing to state a claim upon which relief may be granted. In considering a motion to dismiss, all well-pleaded factual allegations contained in a complaint are to be taken as true and viewed in the light most favorable to the plaintiff. *See Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). Nevertheless, the complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action," and it must allege facts specific enough to raise a right to relief above the speculative level. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).

Stout's Complaint attempts to allege three claims against Haight:

1. A claim based on bullying, harassment and intimidation by Haight;

2. A claim based on retaliation by Haight; and

3. A claim based on Haight's failure to protect Stout from bullying, harassment and intimidation by fellow offender Brown and other inmates.

Based on my review of Stout's Complaint, I will grant Haight's Motion and dismiss Stout's claims based on bullying, harassment and intimidation and failure to protect her from these acts by other offenders. Stout's claims that Haight bullied, harassed and intimidated her, or allowed Brown or other offenders to do so, are insufficient to state a claim for violation of the Eighth Amendment. A prisoner's allegations that she has been verbally harassed, without more, do not state a constitutional violation of the ban on cruel and unusual punishment. *See Collins v. Haga*, 373 F. Supp. 923, 925 (W.D. Va. 1974); *see also Henslee v. Lewis*, 153 F. App'x 178, 179 at *1 (4th Cir. 2005) (unpublished) (citing *Collins v. Cundy*, 603 F.2d 825, 827 (10th Cir. 1979)).

I also will grant the Motion in part and dismiss a portion of Stout's retaliation claim. In order to state a claim for retaliation under § 1983, a plaintiff must allege that (1) she engaged in protected First Amendment activity, (2) the defendant took some action that adversely affected her First Amendment rights, and (3) there was a causal relationship between her protected activity and the

defendant's conduct. *See Martin v. Duffy*, 858 F.3d 239, 249 (4th Cir. 2017). Furthermore, the Fourth Circuit has held that the First Amendment right "to petition the Government for a redress of grievances," U.S. Const., amend. I, protects a prisoner's right to seek administrative remedies. *See Martin*, 858 F.3d at 249; *see also Booker v. S. C. Dep't of Corrs.*, 855 F.3d 533, 540 (4th Cir. 2017) ("if an inmate exercises his First Amendment right when he files a prison grievance, retaliation against him for doing so is unconstitutional.")

Stout's Complaint alleged that Haight retaliated against her because Haight believed that Stout planned to file a complaint against her. In particular, Stout's Complaint stated that Haight confronted her on January 3, 2018, because Haight had been told that Stout had threatened to "write up" Haight. Stout alleged that Haight, in this same conversation, threatened to terminate Stout from her prison job. Stout also alleged that Haight did, in fact, terminate her from her prison job on January 10, 2018.

Haight argues that Stout, through her Complaint and attachments, has conceded that she did not file any Informal Complaint until January 12, 2018, — two days after Haight terminated Stout from her prison job. Therefore, Haight argues, Stout cannot demonstrate a causal relationship between her protected activity and Haight's conduct, in that Haight fired Stout before Stout engaged in protected activity by filing her Informal Complaint. The defendant's argument

highlights the question to be answered by the court: Can a defendant's conduct amount to "retaliation" if it is taken before the plaintiff engages in protected activity?

In *Booker,* the Fourth Circuit affirmed its prior ruling that a prison inmate has no "constitutional entitlement or due process interest in access to a grievance procedure." 855 F.3d at 541 (citing *Adams v. Rice*, 40 F.3d 72 (4th Cir. 1994)). Thus, actions taken to prevent an inmate from utilizing a prison's grievance procedure do not violate any constitutionally protected right. Once an inmate files an informal complaint or grievance, however, she has exercised her First Amendment right to seek redress from the government, and any adverse action taken against her because of the exercise of this right is a constitutional violation. *See Booker*, 855 F.3d at 540. In *Adams*, the court stated:

> [C]laims of retaliatory actions are legally frivolous unless the complaint implicates some right that exists under the Constitution. That is, plaintiffs must allege either that the retaliatory act was taken *in response to* the exercise of a constitutionally protected right or that the act itself violated such a right.

40 F.3d at 75 (emphasis added).

The evidence submitted by Stout in support of her Complaint shows that she did not file any request for administrative remedies regarding the allegations raised in this case until January 12, 2018 — two days after she was terminated from her vestibule worker job by Haight. Therefore, Stout cannot show a causal

-15-

relationship between protected activity and the loss of her vestibule worker job. Nonetheless, Stout also alleged in her Complaint that Haight retaliated against her by refusing to sign paperwork allowing her to receive another prison job. Stout alleged that these actions by Haight did occur after Stout had begun seeking administrative remedies against Haight. Further, Haight's statements to Stout, if found credible, would be evidence supporting a causal relationship between Stout's protected activity and Haight's actions.

Based on the above, the Motion, ECF No. 21, is GRANTED IN PART AND DENIED IN PART. With regard to Stout's retaliation claim, and I will dismiss Stout's retaliation claim insofar as it is based on her termination from her vestibule worker job for failing to state a claim upon which relief may be granted. The claim that Haight retaliated against Stout for filing complaints and grievances by refusing to allow her to seek other prison employment is sufficient to state a claim for retaliation, and it will remain.

It is so **ORDERED**.

ENTER: September 24, 2019

/s/ *James P. Jones*
United States District Judge